All right, we'll now move from DNA testing to insurance coverage. Certified Multi-Media Solutions versus Preferred Contractors. Good morning, Your Honors. May it please the Court. I'm Cheryl Vollweiler of Traublieb Marinstraus & Shrewsbury, and I'm here representing defendant appellant PCIC Insurance Company Risk Retention Group today. I'd like to call the Court's attention to two fundamental problems with the trial court's decision in this case. The first one is that it results in a patently absurd result in this particular case. The second one is that it opens the door to a potentially very troubling problem for insurance in the state of New York generally. The issue here is that the policy is subject to endorsement 23, an action over endorsement, that limits coverage to any insured under this policy. Doesn't your interpretation render the second paragraph superfluous? Absolutely not. There are only two ways that anybody can overcome the worker's compensation. But if you're right and the first paragraph applies to certified, period, then the $10,000 cap applies any time there's a certified employee involved. The second paragraph says the $10,000 cap applies to you, in this case meaning certified, only if there's a grave injury. So the two are contradictory then. They're not contradictory. When you read them together within the rubric of New York law on Labor Law 240 cases, they work perfectly in tandem. PCIC writes in many states, just New York. Other states don't have a common law indemnity for grave injury exceptions. Can you focus on Judge Chin's question? I think you're saying here that the word insured covers the company. It absolutely does. Well, why then isn't the second paragraph superfluous? Because you're saying that the $10,000 liability applies under the first paragraph. It's a point of clarification specifically intended to address a quirk in New York law that doesn't exist elsewhere that PCIC writes coverage. In New York, under normal circumstances in a state that doesn't have the grave injury exception, paragraph one would be enough. What PCIC underwriters found was that they needed to clarify for New York insureds that under normal circumstances in other states, you don't get more than $10,000 worth of coverage for your typical contractual indemnification and other such claims. That applies to everybody. We understand that in New York, there's this grave injury exception, which only can be asserted against the named insured. It can't be asserted against anybody who isn't the specific employer of the injured plaintiff in the underlying case. And therefore, we're making it very clear to you, Mr. Policyholder, you only get $10,000 even if it's a grave injury case. It doesn't matter if it's a broken ankle or a traumatic brain injury. It applies in both instances. Okay. You know, it doesn't come up in states where that grave injury exception doesn't also apply, and that's why they don't do it. Is there any language in the policy that supports the interpretation that uninsured in the first clause includes the named insured? Absolutely. It's the ISO. This policy adopts the ISO definition of who is an insured. It's section two, who is an insured. It goes through every possible type of entity that could apply for and get this insurance. That section two seems to identify who precisely is covered depending on the entity of the insured. That's exactly right. But in other words, if you're an individual and you're the insured, then your spouse is covered. If you are a partnership, your partners are covered. That doesn't seem to really address the point of whether, for purposes of endorsement 23, an insured includes the named insured. It does. Paragraph D of section two, who is an insured, specifically says if you're an organization other than a partnership, joint venture, or limited liability company, you are an insured. And then in addition to that, your executive officers and directors are insured, but only with respect to their duties as such. Your stockholders are insured, but only with respect to their liability as stockholders. Is this a definition of an insured, or is this identifying the different individuals who are also covered? Absolutely the definition of an insured. New York law has made abundantly clear for many years, going back to Mugavero, that an insured, when used particularly in the context of employment liability exclusions and limitations, includes any insured. Any insured includes the named insured. Indeed, endorsement 23 specifically has a footnote on it that says you is the named insured. The definition of who is an insured includes you. Reading it out significantly changes the ISO definition of who's an insured. And that raises my second point, which is upholding the child court's decision in this case opens a very serious Pandora's box for all insurance companies in New York. If this is affirmed, it's going to allow policyholders on any kind of policy to come in and challenge the applicability of any term condition, provision, exclusion, or endorsement that they don't feel like complying with, because this decision will say, well, you know what? You're right, this doesn't apply to you named insured. You're not an insured, despite what the policy wording specifically says. We're only going to hold your stockholders, officers, directors, volunteer workers, and employees to that. This isn't legislation that requires some sort of action by the legislature, or it's not a constitution, but this is contract. The contract can be, if you don't like whatever the decision is, then everybody can contract differently. Well, we're going to wind up with an awful lot of fights over what the contract says, if the policyholders can read themselves out of their obligations. Maybe it'll encourage insurance companies to write these things more clearly. On behalf of the insurance companies, we don't think you are an insured could be any clearer. And ISO, who is the arbiter of what should be, and the standard bearer for how these things should apply, says you are an insured. And New York courts have routinely held, both federal and state, that when wording is given a definition in one place in the policy, it's afforded the same meaning every place in the policy. Thank you. We'll hear from the other side. Thank you. Please support Thomas Martin appearing for St. Paul Fire and Marine, the intervener plaintiff appellee. St. Paul Fire is one of the issuing companies of the Travelers Group of Companies, so we're an insurance company, and we're appearing seeking to have the PCIC policy enforced according to its terms. In the papers below, in the papers in this court, and now at this argument, Judge Chin, your question has not been answered. What is the circumstance under the interpretation put forth by PCIC where the second paragraph of Endorsement 23 applies and the first doesn't? There is no circumstance under their interpretation. I think what your adversary has been saying is that this is an underscoring of the cap that appears in the first, because questions had arisen, given the New York workers' comp scheme and the grave injury exception, that there's no exception, that this still applies to you, is what she's saying. And so it's an emphatic repetition of the cap. That's an argument made initially today, by the way, as far as some policy provision that PCIC did, but that ignores the fact that on at least seven different points in this policy, the term insured and the name insured are used separately, and Judge Spat relied on that in coming to his conclusion, that they specifically, time after time after time, in provisions in this policy, talk about the named insured, which here is certified, and you being, that is, the insureds under the policy that are defined under the ISO form. So you can only reach their conclusion by ignoring the other parts of the policy. This is a specific endorsement. We're dealing with this policy and PCIC's drafting of this policy. And they put in this second paragraph, which says, this $10,000 exception shall apply when there is a grave injury to you, the named insured. Here, it's conceded this is not a grave injury case, and therefore the $10,000, as Judge Spat found correctly, does not apply to the Balzano lawsuit. And therefore, Judge Spat's opinion should be affirmed. And I'll defer to Certified's attorney for the rest of the time. Thank you. Good morning. Anita Yehuda for the Pele Certified. I fully concur with the arguments set forth by counsel. I just wanted to highlight several other rules of policy construction that are applicable here and which support our interpretation. The first, which counsel did touch on, the manuscript section of the policy, where this endorsement appears, specifically says that- Sorry, so where exactly are you referring to? I'm not sure that I- The policy is made up of two sections. One is the ISO form, and one is the, quote, manuscript section. There are separate provisions under each one, which I've set forth in my brief at pages 9 and 10. I've specified the page numbers there. The ISO form is 27 to 28. The manuscript section, parts of which start at page 32 of the record, specifically states that if there is a conflict or variance between the two sections, that the manuscript section applies and governs and supersedes the ISO form. So whereas counsel for PCIC relies heavily on the ISO form, the manuscript section is the one that applies if there's a variance. And the variance here is that many, many times, I believe probably about 20 times in that section, the term insured slash and or named insured is used. And that would clearly mean that in that manuscript section, the word insured and named insured have different meanings. Words have to mean something, and they're being distinguished in that section. Nonetheless, the opening paragraph is very broadly worded in the endorsement. Any and all claims have the cap of 10,000, right? Right. We just ignore that because of the following. Well, that is PCIC's argument, that we should ignore the any and all language and somehow cut out. In fact, her argument requires us to parse and put in, to add in the words. If you're going to go along with that argument, you'd have to put into that first paragraph non-grave injury in order for the argument to make sense. Because what she argued is paragraph 2 applies to grave injuries, whereas paragraph 1 applies to non-grave injuries. Even though the language actually doesn't say that, it says any and all. So it's a completely unreasonable interpretation of that section. The second rule of policy construction that New York law follows is that any limitation on coverage must be described in clear and explicit language. And the insurer has the burden not only to show that their interpretation is reasonable, but the language is that the proposed construction is the only construction which may fairly be placed on the words. And clearly they haven't done that because there's numerous constructions. And this is an endorsement that's a severe limitation on coverage, bringing it from $1 million to $10,000. So if they wanted to include this endorsement, it should have been very clear. And to just address counsel's argument that this would open a Pandora's box, the Pandora's box is actually the opposite. This is a very unusual provision. I've done coverage work for 20 years. I actually have never seen this type of endorsement. It's very unusual. So this is something specific to the PCIC policy. And the Pandora's box here would be that an insurer can limit coverage from $1 million to $10,000 by putting this very ambiguous and vague policy so that the policyholder doesn't really understand what they're getting into because no reasonable subcontractor in their right mind would have purchased a policy that didn't cover contractual indemnification on a job that they're doing for the target corporation with several layers of insurance. If this had been clearly set forth in the language that they themselves used, insured and or named insured, for example, if that had been in this endorsement, I would say that the policyholder would never have purchased this policy. And he said so in his affidavit, which, again, under New York law, if the ambiguity cannot be resolved, the court looks to extrinsic evidence and construes the policy in accordance with the reasonable expectations of a policyholder such as my client. So... Your red light is on anyway. Okay. And any ambiguity, if there is any, should be construed in favor of coverage. Thank you. Thank you. We'll hear the rebuttal. Thank you, Your Honor. I have a couple of responses to that. Mr. Martin said that you does not include the insureds. That's not true. You is specifically defined as the named insured. Insureds is everybody who could possibly receive the benefit under the policy. They're turning insurance coverage on its ear by trying to make it the opposite of what the policy actually says. Of course there's a difference between the named insured and an insured. You can only issue a policy to the entity that's purchasing it. Item 1 of the declaration states named insured, which is the person or entity purchasing the policy, in this case certified multimedia. Insureds, under Section 2, is everybody that could potentially derive a benefit under certified multimedia's policy, as it's defined. It includes you, the named insured, your shareholders, your stockholders, your officers, your directors, your employees, your volunteer workers under certain circumstances within their job description. Any attempt to carve those two out and say that the rest of the policy should only apply to other insureds, as opposed to the named insured, truly is not what insurance is written to do. We cover certified. We don't cover everybody else unless certified is part of the policy. The argument that any extrinsic evidence should be considered and the reasonable expectations of a policyholder have no bearing here and shouldn't be considered because the judge below specifically said the policy and this endorsement specifically are not ambiguous. There's no room for extrinsic evidence. To the extent that there could be, however, a policyholder has an obligation under New York law to read their policy and understand it and reject it if they don't agree with what it says or it's not consistent with what they purchased. This is the reason there are insurance brokers for commercial coverage. If they got a policy that they thought was giving them something else and actually didn't, then that's a broker errors and omissions issue that they need to take up with their broker. Judges, they paid $2,800 for this insurance policy. They clearly weren't getting the Cadillac of insurance. They could have paid $20,000 and had zero sublimits and much higher limits of liability. They purchased something that was what they determined they wanted with the assistance of a broker to guide them. They can't now come back and try and twist the terms and the definitions to say, no, no, no. Everybody else that I might have to cover only gets $10,000, but I get a different benefit than what I actually paid for. Thank you. We'll reserve decision.